## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

SENH PHUN, )
          )
     *Petitioner,* )
          )
v. )     Criminal Case No. 1:10-cr-446
          )     Civil Action No. 1:14-cv-592
UNITED STATES OF AMERICA, )
          )
     *Respondent.* )

### MEMORANDUM OPINION

This matter comes before the Court on Petitioner Senh Phun's Motion to Vacate under 28 U.S.C. § 2255. Dkt. No. 344. The government has filed a response, to which Petitioner replied. Dkt. Nos. 394, 407. For the reasons stated below, the motion will be denied.

### I.    Background

From June to October 2010, the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") conducted an undercover investigation involving Petitioner and other co-conspirators. In June 2010, an ATF confidential informant introduced three undercover law enforcement officers ("UCs") to Petitioner, who was based in Philadelphia. During the meeting, they discussed Petitioner's large-scale marijuana trafficking as well as a potential armed robbery of a narcotics "stash house" in Virginia. Following this initial meeting, Petitioner met with the UCs from June 2010 to October 2010, exchanging contraband cigarettes for marijuana.

On October 6, 2010, Petitioner met with the UCs in Fairfax County, Virginia to discuss the logistics of the stash house robbery. The UCs provided him with pictures of motels, explaining that these were the locations where one UC had previously picked up kilograms of cocaine. The UC explained that when he arrived to collect the drugs, he observed ten kilograms

of cocaine and was met by three or four armed individuals. Petitioner then explained that he had access to ballistic vests as well as FBI raid jackets and hats, and that he and his associates could pose as law enforcement during the robbery. The UCs informed him that the cocaine would arrive at the stash house in three weeks.

On October 21, 2010, the UCs met with Petitioner, Defendant Johnson, and a third unnamed individual at a Famous Dave's restaurant in Philadelphia to discuss the upcoming robbery. The UCs explained the seriousness of the robbery and questioned the Defendants' desire to conduct it. Defendants agreed that they wished to go through with it. Johnson confirmed that the crew would bring their own firearms for the task. At the end of the meeting, the UCs informed the defendants that the cocaine would arrive in Virginia the following Thursday. Defendants agreed that they would travel to Virginia on Wednesday and conduct the robbery on Thursday.

On October 28, 2010, Petitioner's co-conspirators arrived in Virginia to conduct the robbery. Defendant Un contacted the UCs and arranged to meet at a gas station in Fairfax County, Virginia. Around 11am, the UC arrived at the gas station where the defendants were parked in a white Suburban. Defendants Un and Johnson approached the UC where they shook hands. The UC then advised the defendants to follow him to a storage facility where the rental car to be used for the robbery was located.

After following the UCs to a storage facility, Defendants Un, Johnson, and Min indicated that they were ready to do the job, and stated that the firearms were in the white Suburban. After more discussion, the UC suggested that they transfer the firearms from the Suburban to the rental. Un then walked to the Suburban and engaged in conversation with Defendants Stevens and McCalister. Ten minutes later, Stevens and McCalister exited the car and walked towards

2

the storage unit, concealing firearms under their clothes and in their pockets. They then placed the guns in a compartment inside the rental car. McCalister and Stevens then joined the rest of the group in the storage unit. The UC asked the defendants whether they were ready, and they confirmed they were. At this time, the UC pretended to receive a call from a drug organization member and advised the group that it was time to start the robbery. Law enforcement then moved in and arrested the defendants. That same day, Petitioner was arrested in Philadelphia.

On December 28, 2010, a federal Grand Jury charged Petitioner in a three-count superseding indictment for conspiring to affect commerce by robbery, possession of a firearm in furtherance of a crime of violence, and conspiring to possess with intent to distribute five kilograms or more of cocaine. Dkt. No. 35. The jury trial commenced on March 14, 2011. On March 18, 2011, the jury convicted Petitioner of all three counts. Dkt. No. 161. On July 22, 2011, the Court sentenced Petitioner to a total of 270 months imprisonment: 210 months of incarceration on Counts One and Three, to run concurrently, and a consecutive 60 months on Count Two. Dkt. No. 268. On August 1, 2011, Petitioner filed his Notice of Appeal. Dkt. No. 279. On January 3, 2013, the Fourth Circuit affirmed his conviction. Dkt. No. 319.

## II.    Discussion

Petitioner seeks to vacate his sentence pursuant to 28 U.S.C. § 2255. A petitioner is entitled to relief under 28 U.S.C. § 2255 only in the extraordinary event that he demonstrates either: (1) a lack of jurisdiction by the convicting court; (2) constitutional error; or (3) legal error so grave as to be "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (citation and internal quotation marks omitted). It is well settled that bare, conclusory allegations are insufficient to entitle a

petitioner to relief under § 2255. *See, e.g., United States v. Dyess*, 730 F.3d 354, 360 (4th Cir. 2013), *cert. denied*, 135 S. Ct. 47 (2014).

## A. Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance of counsel, in violation of his Sixth Amendment right, for two principal reasons: (1) his counsel's failure to argue that the indictment was duplicitous; and (2) his counsel's failure to object to the jury instructions related to Count Two. In the landmark *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated a two-part standard for evaluating claims of ineffective assistance of counsel. The first prong requires a showing that counsel failed to provide reasonably effective assistance—that is, that counsel's conduct fell below an objective standard of reasonableness in light of the circumstances at the time. *Id.* at 687–88. This prong presents a high burden because the Court must "presume[] that the defendant's counsel rendered objectively effective performance." *See United States v. Dyess*, 478 F.3d 224, 237 (4th Cir. 2007). The second prong requires the defendant to prove prejudice by "show[ing] that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693–94. Importantly, a court need not review the reasonableness of counsel's performance if the petitioner fails to show prejudice. *Quesinberry v. Taylor*, 162 F.3d 273, 278 (4th Cir. 1998) (citing *Strickland*, 466 U.S. at 697). Under this standard, the Court will address each of Petitioner's arguments.

### i. Counsel's Alleged Failure to Argue that the Indictment Was Duplicitous

Petitioner claims that his counsel was ineffective for failing to challenge the indictment as duplicitous. He maintains that Count Two was duplicitous because it charged him with two distinct offenses in a single count under 18 U.S.C. § 924(c): (1) using or carrying a firearm

4

during and in relation to a crime of violence, and (2) possessing a firearm in furtherance of a crime of violence. Pet'r's Mot. Vacate 5. To support his claim, Petitioner relies principally upon a decision of this Court, in which it dismissed two counts of an indictment under § 924(c) as duplicitous because the language of the statute "delineate[s] two quite different, albeit related, proscriptions." *United States v. Pleasant*, 125 F. Supp. 2d 173, 176, 183 (E.D. Va. 2000). Based on the alleged duplicity here, Petitioner contends that the outcome of his trial "would have been different because the district court would have dismissed Count Two of the Superseding Indictment." Pet'r's Mot. Vacate 9.

"[D]uplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. Burns*, 990 F.2d 1426, 1438 (4th Cir. 1993) (citation and internal quotation marks omitted). "Duplicitous indictments present the risk that a jury divided on two different offenses could nonetheless convict for the improperly fused double count." *United States v. Robinson*, 627 F.3d 941, 957 (4th Cir. 2010); *accord United States v. Kamalu*, 298 F. App'x 251, 254 (4th Cir. 2008) (observing that duplicitous indictments present "the danger that a conviction will result from a less than unanimous verdict as to each separate offense" (citation and internal quotation marks omitted)). Significantly, however, in the absence of prejudice, even "a duplicitous count is not to be dismissed . . . ." *Kamalu*, 298 F. App'x at 254; *accord Robinson*, 627 F.3d at 957 (affirming conviction "assuming that § 924(c) creates separate offenses and that the indictment's conjunctive charges were plainly duplicitous" where defendant failed to show prejudice).

Petitioner maintains that the indictment in this case was duplicitous because both this Court and the Fourth Circuit have determined that § 924(c) "creates distinct 'use and carry' and 'possession' offenses." Pet'r's Reply Br. 10–11 (quoting *United States v. Woods*, 271 F. App'x

5

338, 343 (4th Cir. 2008)); Pet'r's Mot. Vacate 7 (citing *Pleasant*, 125 F. Supp. 2d 173). *Woods*,

however, was "an unpublished, non-precedential opinion" that "dealt with the mismatch between

a jury instruction and an *admittedly sufficient indictment*." *United States v. King*, 628 F.3d 693,

700 n.3 (4th Cir. 2011) (emphasis added). As such, it serves only as persuasive authority and the

Court is not bound by it. Indeed, the Fourth Circuit subsequently observed in a *published*

opinion that "the number of offenses in § 924(c) is unsettled." *Robinson*, 627 F.3d at 957 n.4. In

light of the unclear precedent on this issue, the government appropriately charged the § 924(c)

count conjunctively, as is typically required when a statute is written in the disjunctive. *See*

*United States v. Montgomery*, 262 F.3d 233, 242 (4th Cir. 2001).

Moreover, Petitioner's counsel has averred that he deliberately chose not to contest the

indictment as duplicitous in light of the possibility that the government could return a

superseding indictment charging Petitioner with not one, but two counts under § 924(c), which

he believed could have prejudiced the jury against him. Katz Decl. ¶ 1. Reasonable strategic

decisions do not constitute deficient performance under *Strickland*. *Spencer v. Murray*, 18 F.3d

229, 234–35 (4th Cir. 1994). Furthermore, the Court must "presume that challenged acts are

likely the result of sound trial strategy." *Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994).

Because counsel has indicated that he acted strategically on the issue of duplicity, his

performance did not fall below objective standards of reasonableness for failing to object on that

basis, especially given the unsettled precedent. Petitioner thus fails to satisfy the first prong of

the *Strickland* test for this aspect of his claim.

Even assuming that the statute creates two district offenses and Count Two was

duplicitous as a result, Petitioner has suffered no prejudice because the special verdict form

utilized in this case clearly demonstrates that the jury separately and unanimously convicted him

6

of both the possession *and* the carrying prongs of § 924(c). Dkt. No. 161; *Robinson*, 627 F.3d at 957. Accordingly, Petitioner's first ground for ineffective assistance of counsel will be denied.

### ii. Counsel's Alleged Failure to Object to the Jury Instructions on Count Two

Petitioner also asserts that his "counsel's failure to object to the jury instructions was erroneous because it stems from and carries over the duplicitous nature of Count Two of the Superseding Indictment." Pet'r's Mot. Vacate 12. As above, even if the indictment was duplicitous, no prejudice exists because Petitioner was separately and unanimously convicted of both the possession and the carrying prongs of § 924(c). Dkt. No. 161; *Robinson*, 627 F.3d at 957–58 (upholding conviction where government charged a violation of § 924(c) conjunctively and then provided disjunctive jury instructions in part because defendant failed to show prejudice); *see also United States v. Perry*, 560 F.3d 246, 256 (4th Cir. 2009), *as corrected* (Mar. 31, 2009) ("It is well established that when the Government charges in the conjunctive, and the statute is worded in the disjunctive, the district court can instruct the jury in the disjunctive."). This ground of Petitioner's *Strickland* claim will therefore be denied.

He next maintains that counsel was deficient for failing to object on the basis that the instructions "failed to require that Movant knew in advance that one of his codefendants would be armed as explain[ed] in *United States v. Rosemond*." Pet'r's Mot. Vacate 14. As an initial matter, *Rosemond* is not retroactively applicable to cases on collateral review unless and until the Supreme Court declares it so. *See Tyler v. Cain,* 533 U.S. 656, 663 (2001) (internal quotation marks omitted); *see also, e.g., Beale v. Andrews*, No. 5:14-hc-2064-fl, 2015 WL 4066565, at *3 (E.D.N.C. July 2, 2015). Notwithstanding, the Court will consider the issue on the merits.

Upon careful review of the ruling in *Rosemond*, the Court concludes that it does not require vacatur of Petitioner's conviction on Count Two because the element of requisite

knowledge was in fact sufficiently articulated in the jury instructions. In *Rosemond*, the

defendant took part in a drug deal in which he or one of his confederates fired a gun. Because

the shooter's identity was disputed, the Government charged Rosemond with violating 18 U.S.C.

§ 924(c) for using a gun in connection with a drug trafficking crime or, in the alternative, aiding

and abetting that offense under the conspiracy statute, 18 U.S.C. § 2. The district judge

instructed the jury that Rosemond was guilty of aiding and abetting the substantive offense if he

"knew his cohort used a firearm in the drug trafficking crime" and "knowingly and actively

participated in the drug trafficking crime." *Rosemond*, 134 S. Ct. at 1244 (citation and internal

quotation marks omitted). This instruction deviated from Rosemond's proposed instruction that

the jury consider whether he "intentionally took some action to facilitate or encourage the use of

the firearm." *Id.* Under the former instruction, Rosemond was convicted and the Tenth Circuit

affirmed.

The Supreme Court reviewed the issue and reversed, ruling in favor of Rosemond. It

held that the district court's jury instructions failed to articulate the element of requisite

knowledge with clarity, and were thus erroneous. The Court explained as follows:

> [T]he § 924(c) defendant's knowledge of a firearm must be
> advance knowledge—or otherwise said, knowledge that enables
> him to make the relevant legal (and indeed, moral) choice. When
> an accomplice knows beforehand of a confederate's design to carry
> a gun, he can attempt to alter that plan or, if unsuccessful,
> withdraw from the enterprise; it is deciding instead to go ahead
> with his role in the venture that shows his intent to aid an *armed*
> offense. But when an accomplice knows nothing of a gun until it
> appears at the scene, he may already have completed his acts of
> assistance; or even if not, he may at that late point have no realistic
> opportunity to quit the crime. And when that is so, the defendant
> has not shown the requisite intent to assist a crime involving a gun.
> As even the Government concedes, an unarmed accomplice cannot
> aid and abet a § 924(c) violation unless he has "foreknowledge that
> his confederate will commit the offense with a firearm." For the
> reasons just given, we think that means knowledge at a time the

8

> accomplice can do something with it—most notably, opt to walk
> away.

*Id.* at 1249–50 (citation omitted).  By contrast, the district court's erroneous instructions had

directed the jury to consider *whether* Rosemond "knew his cohort used a firearm," not *when*

Rosemond obtained the requisite knowledge.  *Id.* at 1244.

Here, Petitioner asserts that the jury instructions on aiding and abetting were erroneous

because they did not properly instruct the jury on the element of requisite knowledge.  It appears,

however, that Petitioner has taken a sentence of the jury instructions out of context.  It is well

established that "[an] instruction 'may not be judged in artificial isolation,' but must be

considered in the context of the instructions as a whole and the trial record."  *Estelle v. McGuire*,

502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  In its

instructions to the jury, the Court stated that, in order for the defendants to be found guilty of

aiding and abetting, the government would have to prove beyond a reasonable doubt that they:

(1) "knew that the crime charged was to be committed or was being committed," (2) "knowingly

did some act for the purpose of aiding the commission of that crime," and (3) "*acted with the*

*intention* of causing the crime charged to be committed."  Trial Tr. 731 (emphasis added).

Upon close examination of the instructions, it is evident that any confusion over the

element of requisite knowledge was subsequently clarified.  Although prongs one and three of

the aiding and abetting instruction may have seemed unclear as to *when* the requisite knowledge

must be obtained, the Court elaborated that:

> [m]erely being present at the scene of the crime or *merely knowing*
> *that a crime is being committed or is about to be committed* is not
> sufficient conduct for the jury to find that the defendants aided and
> abetted the commission of the crime.  The Government must prove
> that a defendant *knowingly and intentionally* associated himself
> with the crime in some way as a participant, someone who *wanted*
> *the crime to be committed*, and not as a mere spectator.

9

*Id.* at 732 (emphasis added).  Without explicitly stating the words "advance knowledge," the Court sufficiently communicated to the jury that, to convict Petitioner of aiding and abetting a violation of § 924(c), the government would have to prove that Petitioner "knowingly and intentionally" associated himself with the crime and "wanted the crime to be committed." *Id.* These instructions are analogous to the aiding and abetting standard approved by the Supreme Court in *Rosemond*, providing that "a person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond*, 134 S. Ct. at 1245 (citing 2 W. LaFave, Substantive Criminal Law § 13.2, p. 337 (2003)).

It is thus clear to this Court that the jury instructions in this case were sufficient on the element of requisite knowledge.  Specifically, they required the jury to consider whether a particular defendant intentionally participated in a crime that he wanted to be committed in the future—in other words, whether he intended, based on his advance knowledge, for the crime to be committed.  Furthermore, the evidence amply supported the jury's finding that Petitioner in fact had the requisite knowledge.  He was unquestionably the mastermind of the conspiracy, having orchestrated it months in advance and across state lines.  During meetings on September 16 and October 12, 2010, Petitioner told a UC that he could coordinate a robbery by force.  Trial Tr. 147–58, 170–75.  Thereafter, in a recorded telephone conversation with a UC, Petitioner described the capabilities of his robbery crew: "These, these cats, they're, they're, they're all big, and . . . . You know what I mean?  They . . . they get down."  *Id.* at 185.  The UC then asked him, "they got their things too, right?"  Petitioner responded, "[y]eah, yeah, they got that.  Don't worry about it."  *Id.* at 185–86.  The jury could reasonably infer from this conversation that, in addition to being strong enough to commit a robbery, the co-conspirators would carry guns.

10

The evidence presented at trial thus supports that Petitioner understood—*prior* to the commission of the crime—that firearms were to be used. *See United States v. Davis*, 750 F.3d 1186, 1193 (10th Cir. 2014) (holding pre-*Rosemond* aiding and abetting instruction was proper where it required the jury to find that the defendant consciously shared a co-defendant's knowledge of the § 924(c) offense). Because the jury instructions adequately conveyed the advance knowledge requirement, Petitioner's counsel did not render deficient performance by failing to object. Moreover, because the evidence more than supported a finding that Petitioner had advance knowledge about his co-conspirators use of firearms to commit the robbery, he has suffered no prejudice. Accordingly, this ground for his ineffective assistance of counsel claim will also be denied.

    *iii.*     *Appellate Counsel's Failure to Object to the Alleged Duplicity of the Indictment and Erroneous Jury Instructions*

For the reasons provided above, but particularly the lack of prejudice, appellate counsel was not ineffective for failing to raise on appeal the issues identified by Petitioner.

### B. Outrageous Government Conduct Doctrine

In his reply brief, Petitioner raises for the first time the outrageous government conduct doctrine as a basis for relief. He does not appear to claim that his counsel was ineffective for failing to invoke the doctrine, but rather requests an evidentiary hearing "in regards to the conduct of the Government." Pe't'r's Reply Br. 20. He alleges that the government "set the requirements and goals for the entire crime," and "fabricat[ed] evidence to support the charges put before the jury." *Id.* at 4, 6.

To justify relief under the doctrine, the Fourth Circuit requires conduct "so outrageous as to shock the conscience of the court," which will only occur in "rare cases." *United States v. Dyess*, 478 F.3d 224, 234 (4th Cir. 2007) (citations omitted). This reasoning is in line with

Supreme Court precedent, which has "greatly limited" the application of the doctrine, particularly in drug conspiracy cases where government agents are involved. *See United States v. Hasan*, 718 F.3d 338, 342–43 (4th Cir. 2013) (citing *Hampton v. United States*, 425 U.S. 484 (1976)). For example, in *Hampton*, the Supreme Court held that the defendant's due process rights had not been violated under the outrageous government conduct doctrine where a government informant sold heroin to the defendant, who then sold it to government agents. 425 U.S. at 489–90.

Notably, the Fourth Circuit has *never* held that a defendant's due process rights were violated by the government's outrageous conduct. Indeed, several courts have determined that the ATF's reverse sting operations involving non-existent drug stash houses, such as occurred here, do not "violate fundamental fairness or shock the universal sense of justice mandated by the Due Process Clause of the Fifth Amendment." *United States v. Dunlap*, 593 F. App'x 619, 621 (9th Cir. 2014) (quoting *United States v. Williams*, 547 F.3d 1187, 1200 (9th Cir. 2008)); *accord United States v. Knapp*, 74 F. Supp. 3d 1338 (D. Nev. 2015); *United States v. Colon*, 71 F. Supp. 3d 269, 275 (D. Conn. 2014) (same); *United States v. Duckett*, No. CRIM. PWG-13-626, 2015 WL 424806, at *6 (D. Md. Jan. 29, 2015) (same). Given the highly circumscribed application of the doctrine under Supreme Court and Fourth Circuit precedent, and the dearth of caselaw in support of his position, Petitioner has not shown a due process violation that would warrant vacating his conviction.

### C. Perjured Testimony

Finally, Petitioner contends that the prosecution introduced perjured testimony from the law enforcement agents involved in the case. Specifically, he alleges that the witnesses "stated they could clearly see the guns, yet the video did not show what was being testified to." Pet'r's

Reply Br. 8. He also alleges that "the government never could establish any foundation independent of the agent[']s word as to what was in the van and its condition." *Id.* at 9.

To prevail on his claim, Petitioner must demonstrate that: "(1) the testimony was false; (2) the Government knew the testimony was false; and (3) there is a reasonable probability that the false testimony could have affected the verdict." *United States v. Roane*, 378 F.3d 382, 400 (4th Cir. 2004) (citations omitted). Besides his own conclusory assertions, Petitioner has offered no evidence to meet any of the above requirements. Accordingly, this last claim also fails.

## III.    Conclusion

For the foregoing reasons, Petitioner's Motion to Vacate under 28 U.S.C. § 2255 (Dkt. No. 344) will be denied.

An appropriate Order shall issue.

August 18, 2015

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge